**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| DEONTAE WILSON, ) | |
| ) | |
| *Plaintiff,* ) | Case No. 20-cv-05695 |
| ) | |
| v. ) | Judge Sharon Johnson Coleman |
| ) | |
| DOUGLAS A. COLLINS, as Secretary, United ) | |
| States Department of Veteran Affairs,[1] ) | |
| ) | |
| ) | |
| *Defendant.* ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Deontae Wilson brings this action against her employer, the United States Department of Veteran Affairs (the "Agency"), alleging violations of the Rehabilitation Act, 29 U.S.C. § 791 *et seq.*, and the Privacy Act, 5 U.S.C. § 552a *et seq.* In her complaint, Wilson contends that the Agency accessed her confidential medical records and disseminated that information without her authorization. Before the Court is the Agency's second motion for summary judgment. For the reasons below, the Court grants in part and denies in part the Agency's motion for summary judgment.

**Background**

As this is the Agency's second motion for summary judgment in what has been a very long case, the Court assumes that the parties are familiar with the record. As such, the Court begins by providing a summary of the Court's disposition of the Agency's first motion for summary judgment before explaining the grounds for considering the Agency's second motion for summary judgment. The Court then sets forth the facts relevant to the disposition of this motion, incorporating by

---

[1] The caption has been changed to reflect that Douglas A. Collins was sworn in as Secretary of Veteran Affairs on February 5, 2025.

reference the Court's factual background from its opinion denying the Agency's first motion for summary judgment. (Dkt. 48.)

A. *The Agency's first motion for summary judgment*

Before turning to the substance of the Agency's second motion for summary judgment, a recap of the procedural history of this case is in order. On April 7, 2022, the Agency filed its first motion for summary judgment after a little less than two years of discovery. (Dkt. 36.) In that motion, the Agency argued that Plaintiff's Rehabilitation Act claim failed because (1) Wilson failed to administratively exhaust her claims; (2) there was no evidence that Wilson's medical information was obtained through employment-related medical examinations and inquiries and (3) Plaintiff failed to present any evidence that she suffered a tangible injury as a result of the disclosure. The Court did not consider the first argument but rejected the last two, holding that there was a genuine dispute of fact as to whether the Agency obtained Plaintiff's medical information through employment-related inquires and that emotional harm was sufficient for the purposes of the Rehabilitation Act. (Dkt. 48.)

The Court similarly rejected the Agency's arguments regarding Wilson's Privacy Act claim. In its motion, the Agency argued that because Wilson's Privacy Act claims allege a prohibited personnel practice under the Civil Service Reform Act, her only recourse was to pursue her remedies before the Merit Systems Protection Board and appeal any adverse decision to the Federal Circuit, not the district court. In the alternative, the Agency argued that Wilson could not show that the alleged violation met the prima facie standard of intentional or willful conduct for a claim under the Privacy Act. The Court disagreed with both arguments, finding that the Agency did not identify the prohibited personnel practice contained within the CSRA that encompassed Wilson's claims under the Privacy Act and that there was a genuine dispute as to whether the conduct of Sonia Falk was willful or intentional.

2

Finding a genuine dispute as to Wilson's Rehabilitation Act and Privacy Act claims, and noting that Wilson had withdrawn her Rehabilitation Act retaliation claim in her response, the Court denied the Agency's motion for summary judgment on September 27, 2023.  (Dkt. 48.)

### B. The Agency's second motion for summary judgment

On January 8, 2024, the Court set the matter for trial by jury in November of that year.  (Dkt. 55.)  But on July 15, the Agency moved for leave to file a second motion for summary judgment.  In its motion, the Agency argued that this second motion raised dispositive legal arguments that the Court had not addressed in the first motion, namely: (1) whether Wilson can show that that any access or disclosure resulted in "actual damages" as required by the Privacy Act; (2) whether Wilson's Privacy Act claim regarding Falk's alleged disclosure in October 2017 is untimely under 5 U.S.C. § 552a(g)(5); (3) whether the Privacy Act is inapplicable because Wilson alleges that Falk disclosed information from an oral conversation with a doctor, not from a "system of records"; and (4) whether Wilson's Rehabilitation Act claims fail because she offers no theory that the VA itself, which is not the same as all its employees, can be directly liable for any alleged access or disclosure.  (Dkt. 66.)  After hearing oral argument as to whether the Agency was permitted to file a second motion, the Court granted the Agency's motion, set a briefing schedule, and directed Wilson to include a statement in her response arguing in opposition to or accepting the Court's decision.  (Dkt. 71.)

Whether to permit a second summary judgment motion is "wholly within the court's discretion" particularly "if good reasons exist."  *Gordon v. Veneman*, 61 F. App'x 296, 298 (7th Cir. 2003) (quoting *Whitford v. Boglino*, 63 F.3d 527, 530 (7th Cir. 1995)).  "Permitting a second summary judgment motion is essentially a decision concerning case management, and district court judges are in the best position to make such decisions."  (*Id.*) (affirming district court's decision to grant a second motion for summary judgment as a "good reason" when the court concluded that "it was better to

3

allow a second summary judgment motion than risk wasting judicial resources on a claim that should never have made it to trial").

Efficient case management supports the Court's consideration of some—but not all—of the arguments the Agency raises in its successive motion for summary judgment. Regarding the Privacy Act arguments, the Agency's argument that Wilson cannot show that that any access or disclosure resulted in "actual damages" as required by the Privacy Act is jurisdictional and therefore necessary for consideration prior to trial. As emphasized by the Supreme Court in *FAA v. Cooper*, "a waiver of sovereign immunity must be unequivocally expressed" in statutory text, and the Privacy Act only waives this immunity in suits against the government for tangible economic loss. 566 U.S. 284, 290, 303–04, 132 S. Ct. 1441, 1448, 1455–56 182 L. Ed. 2d 497 (2012). Similarly, though not jurisdictional, whether Wilson administratively exhausted her claims is a condition precedent to bringing her Rehabilitation Act claim in district court subject to waiver, estoppel, and equitable tolling. *Delgado v. Merit Sys. Prot. Bd.*, 880 F.3d 913, 925 (7th Cir. 2018), as amended on denial of reh'g and reh'g en banc (June 19, 2018) (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S. Ct. 1127, 1132, 71 L. Ed. 2d 234 (1982)). Because the Court did not consider these dispositive arguments in its order denying the Agency's first motion for summary judgment, it is appropriate for the Court to do so here.

The posture of Wilson's Rehabilitation Act and Privacy Act claims at trial also weighs in favor of addressing the Agency's arguments in this successive motion for summary judgment. If brought to trial, adjudication of Wilson's Privacy Act claim would proceed as a bench trial pursuant to the statutory prohibition of jury trials in suits against the United States under 28 U.S.C. § 2402. In contrast, Wilson's Rehabilitation Act claim would, as demanded by Wilson, proceed before a jury, as Congress waived this statutory prohibition for such claims through 42 U.S.C. § 1981. Avoiding a bifurcated or consecutive trial serves the interests of judicial economy, the parties, and potential jurors.

4

The Court need not consider the Agency's remaining arguments regarding the Privacy Act, as the issue of actual damages is dispositive of Wilson's claims. Similarly, though made in more detail in its second motion, the Agency's arguments that the VA never violated the confidentiality requirements in 42 U.S.C. § 12112(d) is substantively repetitive of those that the Court rejected in its first order. The Court therefore declines to revisit these arguments on this second motion for summary judgment. *See Quaker Alloy Casting Co. v. Gulfco Indus.*, Inc., 123 F.R.D. 282, 288 (N.D. Ill. 1988) (Shadur, J.) ("This Court's opinions are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure.")

For these reasons, and with these limitations, the Court proceeds with its evaluation of the Agency's successive motion for summary judgment.

C. *Summary of relevant facts*

1. *Facts relevant to Count 1: Rehabilitation Act claims*

On November 19, 2018, Wilson initiated informal counseling with a counselor from the Equal Employment Opportunity Commission (EEOC) stating that disability was the basis for discrimination she had experienced from June 2017 to November 19, 2019. (Dkt. 79, Ex. 2.) This counseling was unsuccessful in resolving her complaint, so she filed a formal complaint on December 26, 2018. That complaint was partially accepted for investigation on January 28, 2019. The EEOC investigated the following events and incidents in their investigation:

- **Claim 1, Incidents 1–8:** notably, the first instance of harassment in June 2017 (Incident 1) and the incident on October 30, 2018, where Sonia Falk, Wilson's supervisor, cut her off mid-sentence, and pointed in her face saying loudly, "That is why nobody wants to work with you!" and made harmful and unwelcome statements about her medical file. (Incident 4);

- **Claims 2, 3, 4, 5, 6, 8, 9:** in which Wilson was not selected for various positions and promotions; and

- **Claim 7:** That on November 19, 2018, supervisors, others from the Agency, and a relative of an Agency employee, accessed her patient medical records.

On December 18, 2018, Wilson gained access to her Sensitive Patient Access Report (SPAR), which provided a list of supervisors who had accessed her medical file from August 1, 2015 to December 4, 2018. (*Id.*) Wilson provided the SPAR to the EEOC investigators as a supplemental briefing. The SPAR report did not show that there was an authorized access on or around November 19, 2018 by the individuals named by Wilson in her complaint. Wilson also clarified during the EEOC investigation that the incident with Falk (Incident 4) occurred on October 30, 2017, not October 30, 2018, as she had initially reported.

The EEOC entered a final agency decision on the investigation on June 26, 2020. (Dkt. 70, Ex. B.) With regard to Event 7, access of medical records, the EEOC found that a portion of the claim—that a relative of an Agency employee accessed her record on August 3, 2017—was time barred because Wilson did not raise that issue with an EEO counselor within 45-days of the alleged occurrence, and that there was no record that the relative accessed the records on November 18, 2018. (*Id.*) The EEOC further found that Wilson failed to establish that the Agency violated the Rehabilitation Act with regard to access to her medical records on November 19, 2018. The EEOC considered the October 30, 2017 incident in its discussion of Wilson's hostile work environment claim, but ultimately found that Wilson failed to establish by a preponderance of the evidence that she was subjected to such an environment in a manner prohibited by federal EEO law.

### 2. *Facts relevant to Count 2: Privacy Act claims*

In her Rule 26(a)(1) disclosures, Wilson stated the following regarding damages:

> Plaintiff is claiming that this discrimination caused her to lose wages and
> benefits and caused general emotional distress. She is seeking recovery of lost
> wages or front pay in the alternative as well as any other damages available
> under law. She is also seeking damages for emotional distress and attorney's
> fees.

(Dkt. 70, Ex. O.) Wilson further disclosed that she "reasonably expects to supplement her disclosures as new information becomes available as this case is in the initial stages of discovery." (*Id.*)

In its interrogatory to Wilson, the Agency asked her to "[p]rovide a detailed statement itemizing each and every type of monetary relief sought by plaintiff in this lawsuit, and state for each such item: the specific type of relief sought and the specific dollar amount sought." (Dkt. 70, Ex. N.) Wilson responded, "Plaintiff seeks all damages that are statutorily available under the Rehabilitation Act and Privacy Act." (*Id.*) In that same interrogatory, the Agency asked Wilson to "[p]rovide a detailed statement itemizing each and every type of non-monetary relief sought by plaintiff in this lawsuit." (*Id.*) Wilson responded, "Plaintiff wants individuals who accessed her records improperly and disclosed her confidential information to be terminated, and any negative information in her eOPF to be removed." (*Id.*)

In their deposition of Wilson, the Agency asked Wilson, "are you seeking money damages in this case?" to which Wilson responded "Yes." (Dkt. 70, Ex. A.) The Agency then asked, "And you're seeking money damages in this case because you felt you've been wronged, correct?" to which Wilson also responded "Yes." (*Id.*) When asked to confirm that she was making more money in her current GS7 position than when she was in her hospital position, Wilson responded, "Yes." (*Id.*) The Agency asked no other questions related to money or damages in the deposition.

In her LR 56.1 statement of facts in response to the Agency's first motion for summary judgment, Wilson alleged that she was embarrassed and humiliated by Falk's alleged access and

disclosures of her information. (Dkt. 44, ¶¶ 6, 19; Ex. 1.) Wilson repeated this allegation in her response to the Agency's motion, stating "Wilson suffered a tangible injury (emotional pain and suffering and mental anguish) as a result of the unauthorized disclosure of her sensitive medical information to her fellow Agency employees." (Dkt. 45.)

Wilson filed a declaration and amended Rule 26(a)(1) disclosure in her LR 56.1 statement of additional facts in response to the Agency's second motion for summary judgment. In these documents, Wilson stated that, because of the alleged disclosure and access, she: (1) was forced to seek additional therapeutic treatment; (2) had used up to 97 hours of regular leave; (3) was charged by the Agency with 101.30 hours of Leave Without Pay for additional work missed, which cost about $2,241.12 in lost wages; (4) was forced to withdraw $5,000 from her Thrift Savings Program (TSP) account; and (5) had her truck repossessed and fell behind on her bills, incurring penalties of at least $250. (Dkt. 79, Ex. 1, 3.)

**Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). When determining whether a genuine dispute as to any material fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Id.* at 255; *McDaniel v. Progress Rail Locomotive, Inc.*, 940 F.3d 360, 367 (7th Cir. 2019). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must

set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (citation omitted).

**Discussion**

In its second motion for summary judgment, the Agency argues that Wilson's Rehabilitation Act claims fail because she failed to exhaust her administrative remedies prior to bringing her suit in federal court (Count 1), and that Wilson failed to show that that any access or disclosure resulted in "actual damages" as required by the Privacy Act (Count 2). (Dkt. 68.) The Court address each argument in turn.

*A. Count 1: Failure to exhaust Rehabilitation Act claims*

The Rehabilitation Act prohibits federal agencies from discriminating against an individual on the basis of disability in any program or activity conducted by a federal agency. 29 U.S.C. § 794. Individuals who have suffered discrimination can seek relief pursuant to the procedures and requirements outlined in Title VII of the Civil Rights Act, which include exhausting all administrative remedies prior to bringing suit. 29 U.S.C. § 794a(a)(1). Exhaustion is not a jurisdictional issue, but is a condition precedent to bringing a claim under the Act that is subject to waiver, estoppel, and equitable tolling. *Delgado*, 800 F.3d at 925. The purpose of this requirement is twofold: to promote resolution of the dispute by settlement or conciliation and to ensure that the sued employers receive adequate notice of the charges against them. *Cheek v. Western & Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994).

As part of this exhaustion requirement, a plaintiff must file a timely charge with the EEOC encompassing the acts complained of as a prerequisite to filing suit in federal court—that is, within forty-five days of the date of the alleged discriminatory matter as required by 29 C.F.R. § 1614.105. *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 863 (7th Cir. 1985) (citing *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47, 94 S. Ct. 1011, 1019, 39 L. Ed. 2d 147 (1974)). Timely filing affords the EEOC "an

9

opportunity to settle disputes through conference, conciliation, and persuasion before the aggrieved party [is] permitted to file a lawsuit." *Gardner-Denver Co.*, 415 U.S. at 44. If the plaintiff fails to comply with those steps, then a claim can be raised in district court only if it is reasonably related to a claim in the EEO charge "and can be expected to develop from an investigation into the charges actually raised." *Green v. Nat'l Corp. Midwest Div.*, 197 F.3d 894, 898 (7th Cir. 1999).

While the exhaustion requirement is central to Title VII's statutory scheme, Title VII "is a remedial statute, intended to rectify a long history of discrimination." *Babrocky*, 773 F.2d at 863. Therefore, "courts should avoid technical constructions" when interpreting the statute and, when appropriate, apply equitable considerations to "temper the effect on litigation of the timeliness requirement." *Id.*; *see also Delgado*, 880 F.3d at 925–26 (reinforcing that "because most complaints are completed by laypersons rather than by lawyers, a Title VII plaintiff need not allege in an EEOC charge each and every fact that combines to form the basis of each claim in her complaint").

The extensive record provided by the fifteen-month-long EEOC investigation shows that the Agency had ample opportunity to settle the dispute without judicial intervention and received more than adequate notice of the charges Wilson brings under the Rehabilitation Act in her suit. The EEOC's final decision found that there was no evidence that there was a specific access and disclosure on November 18, 2019, and that Wilson's specific claim that a relative of an Agency employee accessed her files on that date was time-barred. But the record of the investigation is replete with affidavits, interviews, supplemental reports, and analyses from the EEOC regarding the disclosures alleged in her complaint before the Court. All this documentation is reasonably related to Wilson's core EEOC charge so as to place the Agency on notice of the potential for further investigation into her Rehabilitation Act claims. With the principles of equity that motivate the statute in mind, the Court finds that Wilson administratively exhausted her claims under the Rehabilitation Act.

For these reasons, the Court denies the Agency's second motion for summary judgment as to Count 1 of Wilson's complaint.

B. *Count 2: Actual damages under the Privacy Act*

The civil remedies provision of the Privacy Act, 5 U.S.C. § 552a(g)(1)(D) provides that, for any "intentional or willful" refusal or failure to comply with the Act, the United States shall be liable for "actual damages sustained by the individual as a result of the refusal or failure, but in no case shall a person entitled to recovery receive less than the sum of $1,000." 5 U.S.C. § 552a(g)(4)(A). In the context of the Privacy Act, "actual damages" means "special damages for proven pecuniary loss" and does not include "damages for mental or emotional distress." *F.A.A. v. Cooper*, 566 U.S. 284, 299, 304, 132 S. Ct. 1441, 1453, 1456, 182 L. Ed. 2d 497 (2012). These damages must be "specially pleaded and proved." *Id.* at 295.

Wilson's claims that she suffered emotional pain, humiliation, and anguish as a result of the alleged accesses and disclosures but fails to show actual damages as required to bring a claim under the Privacy Act. In her initial Rule 26(a)(1) disclosure, Wilson stated that the alleged disclosures "caused her to lose wages and benefits and caused general emotional distress" and that she was "seeking recovery of lost wages or front pay in the alternative as well as any other damages available under law." (Dkt. 70, Ex. O.) She further stated that she expected to supplement her disclosures "as new information becomes available as this case is in the initial stages of discovery." But throughout the course of discovery, Wilson did not provide any additional detail or evidence of the monetary relief sought, despite being directly questioned by the Agency in its interrogatory and deposition. (Dkt. 70, Ex. N, Ex. A.) Nor did Wilson provide this information in her memorandum or statement of additional facts in response to the Agency's first motion for summary judgment (Dkt. 44, 45.)

Now, in this successive motion for summary judgment, Wilson has provided a declaration outlining alleged leave time used, lost wages, a withdrawal from her TSP account, and penalties for

late bills. (Dkt. 79.) These disclosures are undeniably late. When a party fails to comply with Rule 26(a) or its ongoing disclosure obligations under Rule 26(e), "the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *Pittsfield Dev., LLC v. City of Chicago*, No. 17 CV 1951, 2021 WL 8314423 (N.D. Ill. Nov. 15, 2021) (McShain, Mag. J.); Fed. R. Civ. P. 37(c)(1). This sanction of exclusion "is automatic and mandatory." *Johnson v. C. R. Bard, Inc.*, 77 F.4th 641, 646 (7th Cir. 2023) (citing *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003). "The determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court." *Caterpillar*, 324 F.3d at 857. In making this determination, courts weigh the following factors: (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date. *Id.* at 857.

The lateness of Wilson's damages disclosures, and the fact that they are unsupported by any documentation proving their validity, requires their exclusion. Besides her affidavit, Wilson does not provide any documentation proving these damages. In her response to the Agency's L.R. 56.1 statement of facts, Wilson states that the Agency "has the records related to Plaintiff's leave usage and is aware of Plaintiff's lost wages and benefits related to the events in her complaint." (Dkt. 79.) Wilson cites the Seventh's Circuit's opinion in *Assaf v. Trinity Med. Ctr.*, where the court found that because the defendant "had access to the information relating to procedures and fees" regarding plaintiff's damages, the district court abused its discretion in barring plaintiff from submitting a computation of damages after the close of discovery. 696 F.3d 681, 686–87 (7th Cir. 2012). But unlike in *Assaf*, where the plaintiff had explained in his deposition "how he planned to go about calculating the lost fees," *Id.* at 687, Wilson provided no such methodology to put the Agency on notice of these damages. Nor

has Wilson provided any rationale as to why the Agency would be aware of or have records for such damages as her alleged $5,000 withdrawal from her TSP account or penalties for late bills.

That Wilson filed an amended Rule 26(a)(1) disclosure including these alleged damages does not save them from exclusion. In her first disclosure, Wilson averred that she would supplement her disclosures as new information became available through discovery. (Dkt. 70, Ex. O.) Again, a party is not de facto barred from supplementing their disclosures in the period after the close of discovery but prior to trial. But the damages Wilson currently alleges were available to her as early when she filed her initial complaint. Wilson did not include those damages then, nor does she provide an explanation now as to why such information was not available despite being directly asked by the Agency during discovery.

For these reasons, the Court excludes the alleged damages provided by Plaintiff in her Rule 26(a)(1) disclosure and supporting affidavit. And having only pled emotional distress and humiliation resulting from the Agency's alleged disclosures, Wilson's Privacy Act claim fails to show actual damages as required by the Privacy Act. As such, the Court grants the Agency's second motion for summary judgment as to Count 2 of Wilson's complaint.

**Conclusion**

For these reasons, the Court grants in part and denies in part Defendant's second motion for summary judgment [68]. Summary judgment is denied for Count 1 of Plaintiff's complaint but granted for Count 2 of Plaintiff's complaint.

**IT IS SO ORDERED.**

Date: 4/14/2025

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge